*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0282**

Troy K. Scheffler,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed January 4, 2016
Affirmed
Reyes, Judge**

Anoka County District Court
File No. 02CV142500

Troy Scheffler, Coon Rapids, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Halbrooks, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

Appellant challenges the district court's order granting respondent's motion to dismiss. He argues that respondent commissioner of public safety improperly reported the cancellation of his driver's license to the American Association of Motor Vehicle

Administrators, that his constitutional right to travel was violated, and that he is entitled to relief under the Americans with Disabilities Act. We affirm.

## FACTS

In 1997, the Minnesota Department of Public Safety (DPS) canceled appellant Troy K. Scheffler's license as "inimical to public safety" based on various convictions of driving while impaired (DWI) and revocations under Minnesota's implied-consent laws. As a result, DPS conditioned the restoration of his driving privileges on his complete abstention from the consumption of alcohol. The restricted license that appellant received is known as a B-card.

On December 13, 2010, appellant was arrested for DWI. He submitted to a urine test, which revealed an alcohol concentration of 0.18. Following appellant's arrest, DPS once again revoked and canceled his license as "inimical to public safety." DPS subsequently reported the revocation and cancellation to the American Association of Motor Vehicle Administrators (AAMVA) pursuant to Minn. Stat. § 171.50 (2010).

DPS participates in the Interstate Driver's License Compact (the compact) as a member. *See* Minn. Stat. § 171.50. The compact exists to help ensure the safety of streets and highways in each of the member states. *See id.* art. I. DPS reports to AAMVA pursuant to the compact, and the AAMVA facilitates state reporting to the compact and the dissemination of license information to the member states through a database. *See id.* arts. III, VII.

Appellant filed suit in district court alleging that DPS's reporting to the AAMVA of his B-card violation and license revocation and cancellation was improper under Minn.

2

Stat. § 171.50 because he had not yet been convicted of DWI and a B-card violation is not a qualifying "conviction" under the compact or Minn. Stat. § 171.50. He also argued that, by reporting his license revocation and cancellation, DPS violated his rights under the U.S. Constitution and Title II of the Americans with Disabilities Act (ADA).

Respondent brought a motion to dismiss for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). The district court granted the motion.[1] This appeal follows.

## D E C I S I O N

**Standard of Review**

When a case is dismissed pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted, "[w]e review de novo whether a complaint sets forth a legally sufficient claim for relief. We accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Walsh v. U.S. Bank*, N.A, 851 N.W.2d 598, 606 (Minn. 2014) (citations omitted).

**I.     The district court did not err in granting the motion to dismiss for appellant's failure to state a claim upon which relief could be granted.**

**A.     Minn. Stat. § 171.50**

We construe appellant's argument in his informal brief to be that the district court erred by concluding "that the participating states have discretion per the compact to issue

---

[1] In its order granting the motion to dismiss, the district court noted that "[appellant's] implied consent hearing on his petition to reinstate his driving privileges was originally scheduled to be heard on March 23, 2011 [but the]. . . hearing was not held prior to [appellant's] filing of the compliant herein because [appellant] requested nine continuances of the implied consent hearing."

a license whilst another state is reporting a hold," citing to Article V of the compact. More specifically, appellant argues that the language of the statute is mandatory and does not allow other states to give potential applicants a license once Minnesota reports an applicant's license cancellation and revocation. Appellant misconstrues the statute. Minn. Stat. § 171.50, Article V states in relevant part that "[t]he licensing authority in the state where application is made shall not issue a license to drive to the applicant if . . . [t]he applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation."

Article V of the compact requires the licensing authority in every state that is a member to ascertain whether a license applicant's license has been revoked. *Id.* Minn. Stat. § 171.50 art. V. Here, the district court determined that, based on respondent's affidavits, respondent "did not report that [appellant] had a B-card to the [AAMVA]. Rather, the [respondent] reported that [appellant's] license was revoked and cancelled for six-years" per the statute. The district court also determined that, "[respondent] does not tell other jurisdictions whether to issue a license, it simply shares information regarding [appellant's] driving privileges in the State of Minnesota." Based on this, the court determined that foreign jurisdictions apply the compact and independently determine whether appellant will be issued a license in their jurisdiction. We find no error in the district court's analysis.

**B.    Reporting of appellant's revocation and cancellation**

Appellant further argues that respondent could not have lawfully reported the criminal gross misdemeanor charge related to his B-card violation to the compact because

4

the charge was ultimately dismissed.[2]  He argues that "the [license] cancellation itself was not due to the DWI so reporting it as such is contrary to law."  Appellant states, "an administrative action of cancellation due to merely drinking is not a conviction nor has it anything to do with driving."  Appellant's argument is misguided.

Minn. Stat. § 171.50, Article III states:

> The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code, or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the conviction was a result of the forfeiture of bail, bond, or other security; and shall include any special findings made in connection therewith.

Respondent reported the revocation and cancellation of appellant's license to the AAMVA based on his DWI arrest on December 13, 2010. Appellant was subsequently convicted of DWI on February 24, 2014 based on the December 13, 2010 incident. Appellant concedes that his DWI conviction is properly reported under the compact. Therefore, based on Minn. Stat. § 171.50, Article III, respondent properly reported the conviction.

---

[2] The record is silent regarding appellant's B-card criminal violation, and he does not offer any evidence to substantiate his claim.  Respondent is also silent on the issue of the B-card criminal violation.  However, the district court determined that DPS did not report that appellant had a B-card to the AAMVA pursuant to the compact, but rather that appellant's license was revoked and cancelled for six years.

### C. Appellant's policy arguments

Appellant makes various policy arguments, apparently arguing for a different interpretation of the compact based on legislative intent and a different remedy. Appellant argues:

> B-card cancellations are not predicated on driving violations. The [c]ourt conveniently fails to address this fact. Most likely due to its insistence that somehow DWI is the same as merely drinking with the matter at hand. I find it highly dubious that the [c]ourt would operate under the assumption that the rest of the country is interested in their effort to renew prohibition. . . this petitioner's license is not and was not canceled for drinking…. The cancelation is not due to an offense while driving a motor vehicle. . . This court must stop this charade and follow the legislative purpose of this law.

However, appellant cites no legal authority for a different interpretation of the statute. More importantly, as an error-correcting court, we cannot read into the statute defining the compact a remedy where none exists. *Lake George Park, L.L.C. v. IBM Mid–Am. Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998), *review denied* (Minn. June 17, 1998). As such, "the task of extending existing law falls to the supreme court or the legislature." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987), *review denied* (Minn. Dec. 18, 1987).

**II. The district court did not err by determining that appellant's constitutional right to travel was not violated by reporting his DWI.**

Appellant generally argues that reporting his DWI under the compact violated his constitutional right to travel but provides no further argument, evidence, or legal support in his brief or on the record to substantiate his assertion. Mere assertions of error not supported by argument or authority cannot be considered on appeal except where

6

prejudice is obvious. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997). The general obligation of pro se parties to meet the standards set for attorneys in presenting their case applies on appeal. *See Francis v. State*, 781 N.W.2d 892, 896 (Minn. 2010).

Although the district court did not specifically discuss appellant's challenge that his right to travel had been violated, the district court addressed "[appellant's] constitutional challenges" generally. The district court stated that these challenges were "based on the faulty premise that [respondent] violated [appellant's] constitutional rights because another jurisdiction placed a hold on [appellant's] ability to obtain a license" due to the B-card violation. But respondent did not report that appellant had a B-card, nor was the reporting to the compact related to the B-card. Rather respondent reported that appellant's license was "revoked and cancelled for six-years." Nevertheless, even if we were to consider his argument, it is without merit.

Appellant confuses the right to travel with the privilege of driving. The United States Supreme Court has recognized that the U.S. Constitution protects a person's right to travel. *See Saenz v. Roe*, 526 U.S. 489, 500, 119 S. Ct. 1518, 1525 (1999). However, the Minnesota Supreme Court has stated that this right does not include the privilege to operate an automobile:

> Permission to operate a motor vehicle upon the public highways is not embraced within the term 'civil rights' and is in the nature of a license or privilege. While the privilege is a valuable one, and may not be unreasonably or arbitrarily taken away, its enjoyment depends upon compliance with conditions prescribed by law.

7

*Anderson v. Comm'r of Highways*, 267 Minn. 308, 317, 126 N.W.2d 778, 784 (1964). Here, appellant still has the right to travel. It is only his privilege to drive that has been restricted based on his noncompliance with the law.

**III.     The district court did not err by determining that he is not entitled to relief under the ADA.**

Although appellant does not specifically argue that he is an alcoholic or chemically dependent, he asserts that he is qualified under the ADA because the state regards him as chemically dependent based on his three drinking-related offenses. Without citing to legal authority, appellant states that "[t]he ADA clearly qualifies those regarded as disabled as the [s]tate did when they mailed notice of the B-card and its requirement for the recipient to [s]how rehabilitation from chemical dependency before issuance of a license. . .that the person is still considered, for punitive reasons, disabled."

Again, appellant provides no further argument or evidence in his brief or on the record to substantiate the assertion that he is entitled to relief under the ADA. Mere assertions of error not supported by argument or authority cannot be considered on appeal except where prejudice is obvious. *Modern Recycling*, 558 N.W.2d at 772. Nevertheless, his argument is without merit and barred by collateral estoppel.

The district court stated "[appellant's] argument that the issuance of a B-card to [appellant] by the Commissioner violated the [ADA] has already been litigated in federal court where [appellant]'s claims were dismissed." In general, collateral estoppel applies even though the previous case was litigated in federal court. *Marshall v. Inn on Madeline Island*, 631 N.W.2d 113, 121 (Minn. App. 2001), *review denied* (Minn. Sept. 25, 2001).

*See Willems v. Comm'r of Pub. Safety*, 333 N.W.2d 619, 621 (Minn.1983) (setting forth the factors required for collateral estoppel). Therefore, appellant's ADA claim is precluded under the doctrine of collateral estoppel.

**Affirmed.**