*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0460**

In re the Marriage of:
David Allen Anderson, petitioner,
Respondent,

vs.

Lisa Marie Anderson n/k/a Lisa Marie Syverson,
Appellant.

**Filed January 19, 2016
Affirmed in part, reversed in part, and remanded
Kirk, Judge**

Clearwater County District Court
File No. 15-FA-11-289

Ronald S. Cayko, Fuller, Wallner, Cayko, Pederson & Huseby, Ltd., Bemidji, Minnesota (for respondent)

Thomas T. Smith, Smith Law Firm P.A., Bemidji, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In this marital-dissolution proceeding, appellant-mother argues that the district court abused its discretion by awarding the parties joint physical custody of their minor children, denying her motion to modify custody, and denying her attorney fees. We affirm in part, reverse in part, and remand.

FACTS

In May 2011, respondent-father David Allen Anderson petitioned for dissolution of his 16-year marriage from appellant-mother Lisa Marie Syverson. At the time of the marital dissolution, the parties had four minor children. The district court granted the parties temporary joint legal and joint physical custody, and appointed a guardian ad litem (GAL) to represent the best interests of the children. After a two-day court trial in June 2012, the district court entered a judgment and decree granting the parties joint legal and joint physical custody of the children.

In January 2013, mother appealed the district court's judgment and decree, arguing that it had erred in determining custody and court costs. In an unpublished decision, we reversed and remanded to the district court to provide a more detailed analysis explaining why it awarded the parties joint physical custody, but affirmed on the other issues. *Anderson v. Syverson*, No. A13-0097, 2013 WL 6839682, at *4 (Minn. App. Dec. 30, 2013).

In July, mother moved the district court to find father in constructive civil contempt on numerous grounds, including failing to comply with the six-hour right of first refusal, which required a parent to offer the other parent the opportunity to care for the children if he or she was unable to do so for more than six hours. Relevant to this appeal, mother alleged in her reply affidavit that father circumvented the six-hour right of first refusal by making the children travel to his work site three times per day, traveling a total of approximately 240 miles. After a hearing, the district court found father in constructive civil contempt for violating several provisions of the judgment and decree, including the

six-hour right of first refusal, and awarded mother compensatory parenting time. It ordered father to comply with the decree.

In June 2014, while the case was on remand for a determination of physical custody, mother moved to modify custody and requested an evidentiary hearing, alleging that the joint physical custody arrangement endangered the children's emotional and physical health. Father filed a cross-motion opposing mother's motion in its entirety, and in the alternative, moved the district court to eliminate the six-hour right of first refusal.

At the July 17 motion hearing, the parties appeared with counsel. The parties stipulated that mother would have sole physical custody of F.A., their oldest child, but that they would share joint legal custody of him.

On January 14, 2015, the district court filed an order and memorandum addressing the remaining remanded issue of physical custody of the three other children, as well as the parties' cross-motions. In a detailed and thorough 32-page memorandum, the district court addressed all of the best-interests factors under Minn. Stat. § 518.17, subd. 1(a) (2014), and the joint-custody factors enumerated in Minn. Stat. § 518.17, subd. 2(b) (2014). The district court granted the parties joint physical custody after weighing each factor and providing thorough reasoning in support of its findings and conclusions. The district court also denied mother's custody-modification motion.

Mother appeals.

**D E C I S I O N**

**I.    The district court's findings and conclusions on the best-interests and joint-custody factors are supported by the record.**

"Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). A district court's findings of fact will be sustained unless they are clearly erroneous. *Id.* at 710; *see* Minn. R. Civ. P. 52.01 (stating that findings of fact are not set aside unless clearly erroneous). The law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000). We need not "discuss and review in detail the evidence for the purpose of demonstrating that it supports the [district] court's findings." *Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951). As an appellate court, our role is satisfied when we consider all of the evidence and conclude that the record "reasonably supports the findings." *Id.* We also defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

*A.    Best-interests factors*

A district court's custody decision must be based on the child's best interests. Minn. Stat. § 518.17, subd. 1(a). A district court must consider "all relevant factors," including 13 statutory factors relevant to a child's best interests:

4

(1) the wishes of the child's parent or parents as to custody;

(2) the reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

(3) the child's primary caretaker;

(4) the intimacy of the relationship between each parent and the child;

(5) the interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests;

(6) the child's adjustment to home, school, and community;

(7) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(8) the permanence, as a family unit, of the existing or proposed custodial home;

(9) the mental and physical health of all individuals involved . . . ;

(10) the capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture and religion or creed, if any;

(11) the child's cultural background;

(12) the effect on the child of the actions of an abuser, if related to domestic abuse, as defined in section 518B.01, that has occurred between the parents or between a parent and another individual, whether or not the individual alleged to have committed domestic abuse is or ever was a family or household member of the parent; and

> (13) except in cases in which a finding of domestic abuse as defined in [Minn. Stat. §] 518B.01 has been made, the disposition of each parent to encourage and permit frequent and continuing contact by the other parent with the child.

*Id.*, subd. 1(a).

On appeal, mother challenges the district court's findings on almost all of the best-interests factors as they relate to its joint physical custody determination. After thoroughly reviewing both the district court's findings and the record, we conclude that mother has not shown that the challenged findings are erroneous. We specifically examine some of her arguments contesting the district court's findings.

Addressing the first factor, the record supports the district court's determination that both parents want to spend time with the children. The GAL recommended that the parties share joint physical custody, and she testified that she believed that the children would lose their relationship with father if mother were granted sole physical custody.

We reject mother's challenge to the second factor. The GAL's testimony supports the district court's finding that the children, including L.A., lack the capacity to accurately weigh the temporary discomfort of adjusting to father's home against the benefit of maintaining a close relationship with him.

The district court did not clearly err in finding that the third factor weighed in favor of joint physical custody because, while mother was the primary caretaker as a stay-at-home parent and father was the sole breadwinner, he remained a "constant presence and caretaker" for each of the children since birth.

6

In regard to the fourth and fifth factors, the record supports the district court's findings that joint physical custody allows the children to maintain an emotional bond with both parents. Mother's parents and father's aunt and uncle testified to their close connection to the children, and the GAL testified that father's bond to the children would be damaged if mother had sole physical custody. Mother provided no evidence to substantiate her claim that the joint physical custody arrangement has damaged her extended family's connection to the children.

Addressing the sixth, seventh, and eighth factors, mother argues that father's personal circumstances have dramatically changed since the 2012 court trial, as he has purchased a home in Zerkel, remarried, and now has a stepson. Mother contends that these factors weigh in favor of sole physical custody because her home provides a more stable environment for the children.

The district court concluded that these factors weighed in favor of joint physical custody because father's residency in Zerkel did not constitute a significant upheaval in the children's lives. The community setting in Zerkel is similar to Shevlin, where mother resides, and is close in proximity to mother's residence. The children continued to attend public school in Bagley after father relocated to Zerkel. The district court found that any discomfort or boredom that the children experienced at father's residence was negligible compared to the "immense importance of maintaining a close and frequent bond with" him. The record supports the district court's findings, and we find no error.

Mother argues that the district court erred in concluding that the ninth factor weighed in favor of joint physical custody because neither party has any mental or

physical-health issues. Mother cites no law in support of her argument. An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is waived "unless prejudicial error is obvious on mere inspection." *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted). Therefore, we decline to address the matter.

Likewise, mother contends that the district court erred in concluding that the tenth factor weighed in favor of joint physical custody because both parties are able to provide love, affection, and guidance to the children, arguing that this factor does not favor one form of custody over another. Again, because mother cites no caselaw to support her argument, we decline to address the matter. *Id.*

Regarding the twelfth factor, mother alleges that the district court erred in concluding that this factor supported joint physical custody because the court made no finding of domestic abuse, and there was possible abuse between father and L.A.

The record amply supports the district court's determination. While the district court did not find any domestic abuse, it noted that each party had alleged that the other committed domestic abuse against him/her. In 2011, mother obtained an order for protection against father, but it was dismissed after a full evidentiary hearing. The district court noted that the GAL raised no concerns that any of the children were victims of domestic abuse as contemplated under Minn. Stat. § 518B.01. However, it was concerned that mother had acted inappropriately by involving F.A. in a domestic dispute between her and father. At trial, mother testified that, during an argument with father, he locked himself in the bedroom. Mother told F.A. to get a hammer in order to break down the door and

8

gain entry into the room in which father had locked himself. After F.A. could not find one, she used a hammer to try to break down the door.

Addressing the thirteenth factor, mother contends that the district court erred in concluding that she should take an active role in promoting the children's bond with father, and that father has inhibited her contact with the children. While the district court found that this factor weighed in favor of joint physical custody, it expressed its concern regarding mother's "willingness to encourage the children to have frequent contact and foster a relationship with [father]." The GAL's testimony supports the district court's concern.

In summary, the district court's best-interests findings are not clearly erroneous.

### B.    Joint-custody factors

Under Minn. Stat. § 518.17, subd. 2(b), the district court must analyze the joint-custody factors if either party or the court contemplates or seeks joint legal or joint physical custody. These factors are: (1) the parents' ability to cooperate in rearing their child; (2) methods for resolving parenting disputes and the parties' willingness to use them; (3) whether it would be detrimental to the child to give one parent sole authority; and (4) whether domestic abuse, as defined under Minn. Stat. § 518B.01, has occurred between the parents. Minn. Stat. § 518.517, subd. 2(b).

The record supports the district court's joint-custody findings. It found that, since they separated, the parties have been able to cooperate and resolve disputes, such as transitioning the children to public school. It also found, based on the GAL's reports and testimony, that granting mother sole physical custody would substantially damage the children's relationship with father. Finally, the district court found that no domestic abuse,

9

as defined in Minn. § 518B.01, has occurred.  After weighing these factors, the district court did not err in concluding that joint physical custody was in the best interests of the children.

**II.      The district court did not err in denying mother an evidentiary hearing on her motion to modify custody.**

Under Minn. Stat. § 518.18(d)(iv) (2014), a party seeking to modify custody must establish: (1) a change in circumstances; (2) that modification would be in the best interests of the child; (3) that the child's present environment endangers his physical or emotional health or emotional development; and (4) that the harm that might result from a change of environment is outweighed by the benefits of the proposed change.  *In re Weber*, 653 N.W.2d 804, 809 (Minn. App. 2002).

In order to obtain an evidentiary hearing on a motion to modify custody, the moving party must make allegations that, if true, would allow the district court to grant the motion. *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471, 472 (Minn. 1981).  The party seeking modification of the custody order must submit affidavits that establish a prima facie case for modification.  *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007). When reviewing an order denying a motion to modify custody without an evidentiary hearing, this court: (1) reviews de novo whether the district court accepted the moving party's allegations as true; (2) reviews for an abuse of discretion the district court's determination as to whether a prima facie case exists for the modification; and (3) reviews de novo "whether the district court properly determined the need for an evidentiary hearing." *Boland v. Murtha*, 800 N.W.2d 179, 185 (Minn. App. 2011).

In mother's affidavit, she alleged that, other than the status of her professional training, her life is "pretty much the same" as it had been at trial in June 2012. Mother stated that the children are performing well academically at public school in Bagley. Her allegations of emotional endangerment were as follows: (1) the children's continued objection to visiting father; (2) father violating the six-hour right of first refusal; (3) father's withholding of medical information of a child's medical condition; and (4) his interference with and denial of the children's phone contact with mother. Mother also alleged, generally, that the children are in physical danger because of father's drinking and anger issues.

We conclude that the district court properly denied mother's motion to modify custody without an evidentiary hearing. *See Boland*, 800 N.W.2d at 185-86. Under these circumstances, the district court need not make particularized findings. *See Abbott v. Abbott*, 481 N.W.2d 864, 868 (Minn. App. 1992) (holding that specific findings are unnecessary under Minn. Stat. § 518.18 when denying a custody-modification motion without an evidentiary hearing for failure to make a prima facie case).

Mother admitted that there were no dramatic changes to the children's lives since the judgment and decree. The GAL's reports and testimony also provide relevant information concerning mother's allegations. The GAL stated that the children's relationship with father was improving since the divorce, and that the GAL discerned no evidence that father had a drinking problem.

Moreover, the district court previously addressed the majority of mother's allegations when it found father in contempt of the 2012 judgment and decree. While we

11

are concerned, as was the district court, that father exercised terrible judgment in requiring the children to travel up to 240 miles a day in order to circumvent the six-hour right of first refusal, the record supports the district court's conclusion that father is now complying with the decree's provisions. The district court did not abuse its discretion in concluding that mother failed to establish a prima facie case for the modification of custody.

**III.** **The district court erred in denying mother conduct-based fees for the 2013 contempt motion without explanation.**

Conduct-based attorney fees "are discretionary with the district court." *Szarzynski*, 732 N.W.2d at 295. The district court may award conduct-based attorney fees "against a party who unreasonably contributes to the length or expense of [a dissolution] proceeding." Minn. Stat. § 518.14, subd. 1 (2014).

Mother argues that the district court erred in denying her motion for conduct-based attorney fees incurred in bringing her 2013 contempt motion. The record shows that the district court found father in contempt for multiple violations of the dissolution decree. Mother's counsel also submitted a timely affidavit concerning the fees associated with bringing the contempt motion. *See* Minn. R. Gen. Pract. 119.02. But in its January 2015 order, the district court denied mother attorney fees without an explanation. We reverse and remand for further findings on this issue.

**Affirmed in part, reversed in part, and remanded.**

12